IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YU-HWA PA,<br><br>    Plaintiff,<br>  v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, LARRY DOYLE,<br><br>    Defendants<br>_____/ | No. C-04-1042 MMC<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE** |

    Before the Court is the motion for partial summary judgment, filed May 13, 2005 by defendants San Francisco Bay Area Rapid Transit District ("BART") and Larry Doyle ("Doyle"), with respect to certain claims in plaintiff Yu-Hwa Pa's complaint and for summary judgment on BART's counterclaim against plaintiff, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for June 17, 2005, and rules as follows.

## BACKGROUND[1]

    On May 9, 2001, plaintiff and BART entered into a contract for the construction of

---

[1] The following facts are undisputed or, if disputed, stated in the light most favorable to plaintiff.

improvements to a public plaza area located at BART's 16th Street/Mission Station, for the amount of $1,747,000.  (See Pa Decl., filed May 27, 2005, ¶ 3.)  Among plaintiff's obligations under the contract was to provide BART with "submittals with respect to the metal guardrail system that was to be installed," (see Doyle Decl., filed May 13, 2005, ¶ 9), including "calculations for the railings signed by a California registered Civil or Structural Engineer," (see id. Ex. 7).

      Plaintiff alleges he intended to prepare the above-referenced submittals required under the contract himself, (see Compl. ¶ 22), but that "Doyle, in his capacity as BART project manager in administrating the Contract, and BART coerced plaintiff to subcontract" such work to a third party, Creating Cutting Service ("CCS"), (see Compl. ¶ 23); plaintiff further alleges defendants did so because of defendants' animus toward plaintiff's "race, ethnicity and/or country of origin," (see Compl. ¶ 24), and in violation of plaintiff's "freedom to contract," (see Compl. ¶ 25).[2]  Plaintiff subsequently entered into a subcontracting agreement with CCS on October 15, 2001.  (See Pa Decl. ¶ 6.)

      During the course of plaintiff's work on the construction project, the parties entered into various "Change Orders."  (See Pa Decl. ¶ 15.)  In Change Order 14, executed by BART on August 22, 2002 and by plaintiff on September 16, 2002, the parties agreed that BART would extend the time for plaintiff to complete all required work, and plaintiff agreed to release "any and all claims and potential claims for the Contract period prior to and including August 2, 2002."  (See Doyle Decl. Ex. 10.)

      Plaintiff completed his work on May 9, 2003, (see Pa Decl. ¶ 16), at which time BART was holding "$183,807.61 in contract retention plus an additional $56,636.13 in unpaid progress payments," (see id. ¶ 19).  Although plaintiff demanded that BART pay plaintiff the retention and unpaid progress amounts, BART has not paid plaintiff the

---

[2] Plaintiff has failed to offer any evidence to support these allegations.  The most glaring omission is plaintiff's failure to offer evidence that he was qualified to perform the subcontracted work, and, in particular, plaintiff has not contested defendants' evidence that plaintiff is not a California registered civil or structural engineer.  (See Doyle Decl. ¶¶ 9-10.)  In light of the Court's finding with respect to the release provision, discussed infra, however, the Court need not further address the merits of plaintiff's federal claim.

retention.  (See id.)[3]

## DISCUSSION

In his complaint, plaintiff alleges two claims under state law and one federal claim, specifically, a violation of 42 U.S.C. § 1983.  Plaintiff's federal claim is predicated on the theory that defendants, by "coercing" plaintiff to enter into a subcontracting agreement, violated plaintiff's federal civil rights.  (See Compl. ¶¶ 23-25.)

Defendants argue that plaintiff's § 1983 claim is barred by the release provision in Change Order 14, under which provision, as noted, plaintiff released "any and all claims and potential claims for the Contract period prior to and including August 2, 2002."  (See Doyle Decl. Ex. 10, second page.)[4]  Plaintiff, relying on the provisions of § 1542 of the California Civil Code, asserts he did not realize, at the time he signed the release, that he had a claim under § 1983 arising from his having been "coerced to subcontract" with CCS. (See Pl.'s Opp., filed May 27, 2005, at 6:21-23, 9:1-12.)  Section 1542 provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release."  See Cal. Civ. Code § 1542. Assuming, arguendo, plaintiff could show that he did "not know or suspect" he had a § 1983 claim as of the date he executed Change Order 14, plaintiff nonetheless cannot rely on § 1542, as plaintiff expressly waived the provisions set forth in § 1542 when he signed Change Order 14.  (See Doyle Decl. Ex. 10, second page.)

Plaintiff also argues that Change Order 14 does not implicate his § 1983 claim because the release provision therein does not specifically refer to civil rights claims.  The provision, however, is not ambiguous with respect to the type of claims being released,

---

[3]BART contends that plaintiff did not complete the project on time and, consequently, owes BART the sum of $385,500, less the retention of $183,807, for a total of $201,692, pursuant to a liquidated damages provision in the parties' construction contract.  (See Doyle Decl. ¶ 15.)

[4]It is undisputed that plaintiff entered into an agreement with the subcontractor in question on October 15, 2001, i.e., prior to August 2, 2002.

3

because it refers to "any and all claims and potential claims."[5]  (See id.)  Civil rights claims falling within the scope of an "unambiguous" general release are waived by the release. See Botefur v. City of Eagle Point, 7 F. 3d 152, 157 (9th Cir. 1993) (holding, where employee entered into "unambiguous" agreement releasing employer from liability for "any and all claims," employee's § 1983 claim was barred because he "exchanged his rights under § 1983 for his contractual rights under the agreement").

Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim.

The remaining claims in the instant action are plaintiff's state law claims and BART's counterclaim alleging a state law claim.  The Court's jurisdiction over the state law claims is supplemental in nature.  A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." See 28 U.S.C. § 1367(c)(3).  Where, as here, a district court has granted summary judgment on the federal claim alleged, the district court, pursuant to § 1367(c)(3), may properly decline to exercise supplemental jurisdiction over remaining state law claims.  See Bryant v. Adventist Health System/West, 289 F. 3d 1162, 1169 (9th Cir. 2002).

Accordingly, the Court will decline to exercise jurisdiction over the remaining state law claims.[6]

//
//
//
//
//

---

[5] Plaintiff does not argue that Change Order 14, either in whole or in part, is otherwise unenforceable.  Indeed, plaintiff relies on certain provisions in Change Order 14 to support his state law claims and/or to defend against BART's counterclaim for breach of contract.  (See, e.g., Pl.'s Opp., filed May 27, 2005, at 4:14, 4:27 - 5:1.)

[6] In light of this finding, the Court does not consider whether BART is entitled to summary judgment on its counterclaim.

4

**CONCLUSION**

For the reasons discussed above, defendants' motion for partial summary judgment is hereby GRANTED in part, as follows:

1. Defendants are entitled to summary judgment on plaintiff's § 1983 claim.
2. Plaintiff's state law claims and defendant BART's counterclaim are DISMISSED, without prejudice.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 15, 2005                                 /s/ Maxine M. Chesney
                                                                    MAXINE M. CHESNEY
                                                                    United States District Judge